## REGULARITY OF BIDS FOR A PUBLIC BUILDING.

Court of Appeals for Hamilton County.

STATE OF OHIO, ON THE RELATION OF HOWARD AYRES, A TAX-
PAYER, V. JAMES A. GREEN, ET AL, COMPOSING THE NEW
COURT HOUSE BUILDING COMMISSION OF
HAMILTON COUNTY, OHIO, ET AL.

Decided, July 12, 1915.

*Bids and Bidding—Defects in Form which May be Waived—Separate
Trades Placed on Same Footing as Bidders for the Entire Job—
What Constitutes Competitive Bidding—Separation of Labor and
Materials—Interlineations and Erasures—Bill of Exceptions—Cor-
rection of Omissions and Errors.*

1. A motion for a new trial is in time if filed within three days from
   the entry on the journal of the judgment of the court. *Cincinnati
   v. Kilgour*, 13 C.C.(N.S.), modified.
2. Under the power given to courts to correct mistakes in further-
   ance of justice or to supply omissions in bills of exceptions, a trial
   court has authority to correct a mistake in the number which has
   been given a bill of exceptions and to make a notation of the real
   date of the filing thereof, and where such a correction is made it
   relates back to the real date of the filing.
3. The fact that a bidder for the construction of a public building
   wrote one proposition on the proposal sheet, which he did not find
   in the printed form, is a defect which the building commission has
   power to waive, and where its waiver has the effect of saving money
   for the people it will not be condemned by the courts.
4. The purpose of Sections 2363 and 2364 is to extend the opportunities
   for competition by giving separate trades an opportunity to bid
   separately for their separate branches and receive the same con-
   sideration as those who bid for the entire work, and these sec-
   tions permit a bidder for a part of the work to make his bid cover
   more than one kind of work or materials, even to the extent of
   bidding for all branches of the work except one.

*Matthews & Klein* and *C. C. Williams,* for plaintiff in error.
*John V. Campbell* and *Chas. A. Groom,* Prosecuting Attor-
neys, and *Moulinier, Bettman & Hunt,* contra.

Jones (Oliver B.), J.; Jones (E. H.), J., and Gorman, J., concur.

A motion has been made to strike the bill of exceptions from the files. The reasons urged are:

1. That the motion of plaintiff below for a new trial was not filed within three days after the decision was rendered (Section 11578, General Code, although it was filed within three days from the date of the journal entry of judgment for defendant and dismissing the petition.

2. That the bill of exceptions was not filed in this case within the time fixed by Section 11564, General Code,—that is, not later than forty days after the overruling of the motion for a new trial.

It appears from the bill of exceptions that the court rendered a decision in favor of the defendants on their motion to dismiss the petition, on the 24th day of April, 1915. No record, however, of any such decision is found on the appearance docket or upon the journal of the court. The appearance docket and the journal do show, however, and so does the bill of exceptions, that judgment was entered for defendants dismissing the petition on May 6, 1915, and that a motion for new trial was filed on the same day. On May 13, 1915, an order was made by the court overruling this motion for a new trial, to which exception was then taken by the plaintiff. On June 14, 1915, a motion was filed by plaintiff under leave of court duly given on that date to compel the attachment of original exhibits to the bill of exceptions; and an order was on that day made by the court granting said motion and compelling defendants to produce the original exhibits, offered in evidence and made part of the record in the trial of this case, for attachment to the bill of exceptions and permitting the substitution of copies thereof if desired.

A bill of exceptions was filed in the court of common pleas setting out the evidence and exhibits offered in the case below, on June 14, 1915. This bill of exceptions was filed under the proper caption of the cause below, but, through the inadvertence of the official stenographer, instead of bearing the correct number of the case below, to-wit, No. 158809 it bore the number

158782 which was the number of a case brought by Howard Ayres as a taxpayer against the same defendants that were in case No. 158809, which case had been discontinued because of the fact that said taxpayer before filing his petition failed to make application to the prosecuting attorney to bring such a suit as provided by Section 2922, General Code. The filing of this bill of exceptions on June 14, 1915, was therefore not noted upon the docket of case No. 158809, but was probably noted upon the docket under the case number which it then bore.

On June 25, 1915, the error being discovered, a motion was made to amend this bill of exceptions by changing its number from 158782 to 158809, and for an order showing the filing of the bill of exceptions under No. 158809 on the 14th day of June, 1915. An order was made by the trial court granting that motion so far as to change the number on said bill of exceptions but refusing it so far as it asked for an order showing the filing of a bill of exceptions under No. 158809 on said June 14, 1915. Without any additional filing than as above set out, the bill of exceptions, with the objections that had been filed thereto, was thereupon taken up by the trial judge, and was corrected and allowed by him on June 29, 1915.

The defendants in error contend that the motion for new trial in order to be effective should have been filed within three days after April 24, 1915, the day on which the trial judge handed down his decision in the case, and rely upon the case of *Cincinnati* v. *Kilgour*, 13 C.C.(N.S.), 415, for their construction of Section 11578, General Code.

It is true this case holds that the time the "decision is rendered" under the terms of that Section means the announcement of the opinion of the court, whether an oral or a written opinion. The difficulty, however, of such a construction as that, unlike the verdict of a jury, there is no provision made by statute for making a record of such decision by the court either by the filing of a written opinion as one of the papers in the case or by the noting on the docket of an oral announcement of its decision by the court. And, as already stated, in this case there is nothing in the record to show that a decision was made prior to the en-

tering of the judgment except the fact so stated in the bill of exceptions. The case relied upon by defendants in error is in conflict with the decisions of the Supreme Court in *Buckeye Pipe Line Co.* v. *Fee,* 62 O. S., 543,.at 555, and *Eldridge* v. *Barrere,* 74 O. S., 389, at 395, where it is held that a court of record can only speak by its journal, and that the judgments, orders and decrees of a court of record do not rest in parol, but become effective only when entered on the journal of the court. It must be held, therefore, that the motion for new trial in this case was filed within time, and the time fixed for filing the bill of exceptions would date from the overruling of this motion.

The bill of exceptions was properly filed with the clerk on June 14, 1915, but, because of the error in its number, was not noted upon the appearance docket of the case in which it was taken, and instead was noted upon the appearance docket in the discontinued case. The motion, however, which was made for the production of exhibits and their attachment to the bill of exceptions was noted on the docket of this case, and was so made in connection with this bill of exceptions as to advise all parties interested in the case that it had been filed. Under the authority of *King* v. *Penn,* 43 O. S., 57, 60, and *Burchard* v. *State,* 83 O. S., 1, 10, this bill of exceptions must be deemed as having been filed in the proper case. Under the power given to the court for the correction of mistakes in furtherance of justice, Section 11363, General Code, and to correct omission in bills of exceptions, Section 11572-*a,* General Code, the court below had authority to correct the mistake in the number of this bill of exceptions, and also to note the real date of its filing thereon. *Hazelwood* v. *Parker,* 2 Disney, 429; *Traction Co.* v. *Ruthman,* 85 O. S., 602, 608; *Pace* v. *Volk,* 85 O. S., 413.

The number was duly corrected, and this corretion related back to the filing of the bill of exceptions and rendered unnecessary a new order of notation of such filing, although the court should have granted the motion in that respect and the clerk should have noted the filing upon the apperance docket of the corrected number. The parties, however, and the court as well, treated the bill of exceptions as though it had been filed under

the correct number in the live case in which it was taken, and it was duly signed and allowed by the court within the time fixed by statute, and properly became a part of the record.

The motion to strike the bill of exceptions from the files must therefore be overruled.

By this proceeding in error it is sought to reverse the judgment of the common pleas court refusing to enjoin contracts for the mechanical and electrical equipment of the new court house, as awarded by the building commission to the Standard Engineering Company and the Standard Plunger Elevator Company.

Under elaborate specifications prepared by direction of the building commission bids were taken not only for the whole work but for the various branches of the work such as boilers, steam engines, electric generators, heating and ventilating systems, elevator equipments, etc. Under the provisions of Sections 2362, 2363 and 2364, General Code, forms were prepared permitting lump bids for the entire work and materials, and also separate and distinct proposals for materials and labor for each separate and distinct trade or kind of mechanical labor, embodying twenty-one distinct branches or items. In addition a number of alternatives were provided under many of these items, making some sixty-four possible alternatives. Many bids were received from many different bidders, both for the entire work and separate bids for the different branches of work, different parties bidding as they saw fit under the provision contained in the following paragraph of the bid form:

"Bidders are at liberty to submit proposals for various branches of the work, or for the entire work covered by the drawings and specifications as a whole, as provided for in the proposal sheets."

On full consideration of all the bids received for such work, on recommendation of the architects and engineers certain alternatives were adopted by the building commission, and certain fixtures and alternatives were omitted by them in order to

reduce the amount to be expended upon the mechanical .equipment so that the total cost of the building structure, jail and the mechanical equipment should. not exceed the amount of the bond issue for the erection of the building; and upon a comparison of the bids, using the alternatives decided upon, it was ascertained that the Standard Engineering Company's proposal or bid for the mechanical equipment exclusive of elevators, amounting to $203,350, and the Standard Plunger Elevator Company's proposal for elevators, amounting to $103,855, were the lowest bids, and were together lower in amount than the total of the bids for the same work submitted for each branch of the work by separate bidders; and the contracts were therefore awarded to said bidders on their said proposals.

Plaintiff below contended that the awards so made were not to the lowest bidders. A careful consideration of the record, however, shows that the bids of said companies so accepted were the lowest bids for the work.

The power of the building commission to receive bids in the alternative, which question is raised by the plaintiff in this case, was sustained in the consideration of the contract for the building of this court house which was before this court in *State, ex rel Waltz* v. *Green,* Vol. 22 C.C.(N.S.), 1.

This leaves for consideration, therefore, the question as to whether the bid under which the award was made to the Standard Engineering Company was in accordance with the advertisement and specifications, and was authorized by law.

The proposal sheets as prepared for bidding contained, in paragraph known as MAIN BID A, a form for an entire bid for the whole work. In this form the Standard Engineering Company made a bid of $352,800, separating it into $265,500 for material, and $87,300 for labor, and upon the same page they inserted with a pen the following: ''Alternative Bid A-1, same as Main Bid A, omitting elevator equipment, $232,800.00.'' This form was also followed by separate form for each branch of the work. As before stated, there were some twenty different branches, with alternatives under many of these branches. The award was made to the Standard Engineering Company under

its Alternative Bid A-1. Plaintiff contends that this is not a valid bid and could not be considered by the commission.

Plaintiff claims that this bid is not upon the proposal form prescribed by the commission and is not an alternative bid called for by the advertisements and specifications. It is true that no such alternative was printed upon the form used, but in effect it amounts to the same thing as though each of the twenty printed alternatives for the twenty branches had been bid upon, omitting to bid only upon the elevator equipment, with the provision that the bidder would insist upon an award of all or none of these twenty branches. In other words, instead of detailing twenty bids for the twenty separate branches bid upon, with the provision that all or none should be taken, the bidder simplified the matter by his written alternative bid A-1, giving the aggregate for the twenty separate branches which he desired.

The legality of a bid for all or one of a number of branches is upheld in the case of *Yaryan* v. *Toledo,* 8 C.C.(N.S.), 1, at pages 24 and 25 (aff. 76 O. S., 584). The fact that this proposition was written upon the bid form by the bidder, instead of being provided for in the printed form itself, constitutes a defect which the commission had power to waive, in the form of the bid, and where its waiver operates to effect a saving of money to the people they represent, such waiver should not be critized by a disinterested tax payer or condemned by the court. The power to waive defects is sustained by the case of *State, ex rel Ross,* v. *Board of Education,* 42 O. S., 374, and *Yaryan* v. *Toledo, supra.*

It is also contended that such bid is not a competitive bid, since none of the other bidders were called upon to make such a bid or knew that such a bid would be considered. As stated above, all bidders had the privilege under the form used, without question, to submit bids as to the twenty branches, and all separate bids given for these twenty branches were in direct competition with this bid of the successful company shown in its Alternative Bid A-1, and not only were the lowest combination of these bids upon these separate branches in this competition but when taken in connection with the lowest separate bid for the remaining branch, to-wit, elevator equipment, they were also in direct competition with all lump bids under Main Bid A.

Such a consideration of Sections 2363 and 2364, General Code, is given by the Supreme Court in *State v. Commissioners,* 39 O. S., 188; *State* v. *Hanna,* 13 O. D.; 321, 324.

The purpose of Sections 2363 and 2364 is undoubtedly to extend opportunities for competition to such an extent that separate trades bidding separately for their respective branches can have full consideration in connection with those bidders who are able to make proposals for the entire job; and these sections undoubtedly permit such separate bidders to bid for more than one kind of work or materials to the extent, as in this case, of bidding for all branches except one. And such bids, all of them, come in direct competition with each other.

Further objection is made that this bid does not state separately the amount bid for work and the amount bid for material, as required by Section 2362, General Code. It must be noted that the language of Section 2362 leaves this separation of bids for furnishing material and doing work to the sound discretion of the commission, and is not stated in the mandatory language employed in Section 4329, General Code, which leaves no discretion. But, outside of the language of the statute, such separation of labor and materials must be made with reference to its practicability in the particular case. Labor enters into all materials. The finished product of one trade becomes the raw material of another. The ore of the miner is to him material; the pig-iron is the finished product of the furnace; the bar iron of the rolling-mill; and so on, up the line until the highest form of machinery is reached. A consideration of the items bid upon in the contract before the court shows that there has been no abuse of discretion by this building commission in refusing to consider Alternative Bid A-1 because of the fact that it contains no separation of labor and material,—which, if it were made, must under the circumstances of the case be purely arbitary and inexact; and as separated bids made in competition failed to show that any lower or better price could have been obtained by considering labor and material separate, no injury has resulted to the tax-payer. This matter of the separation of labor and material has been frequently before the courts, and has been simi-

larly considered in other cases. Attention is called to *State, ex rel,* v. *Board of Education,* 14 C. C., 15, 23; *Fergus* v. *City of Columbus;* 6 N. P., 82, at 91.

Another objection is that the bid as made by the Standard Engineering Company shows marks of erasure in its figures. The figures upon the bid, however, are perfectly clear and intelligible. No claim is made that any erasure or change was made after the bid was received by the commission or that there is anything improper in regard to the erasure. It is claimed that this erasure, and the fact that Alternative Bid A-1. was written in with a pen, constitute a violation of the instructions contained at page 13 of the specifications in the general conditions which provide that the bids shall be "without interlineation, alteration or erasure." These defects are such as might have been considered by the commission in determining whether or not the bid should be received, and, as stated above, are such as the commission had power to waive. They do not appear to have prejudiced the rights of other bidders in any way, and it appears that it was not only the right but the duty of the commission to have considered and accepted this bid notwithstanding these defects.

A careful examination of the entire record leads the court to the opinion that the contracts as made are in strict accordance with law, and the judgment below is therefore affirmed.